U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR - 4 2015

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| TUSA-EXPO HOLDINGS, INC., | § | Case No. 08-45057-DML-7 |
| ET AL., | § | (Jointly Administered) |
| | § | |
| Debtors, | § | Adversary No. 10-04271-DML |
| | § | |
| ——————————————————— | § | |
| | § | |
| MARILYN D. GARNER, CHAPTER 7 | § | |
| TRUSTEE FOR TUSA OFFICE | § | |
| SOLUTIONS, INC., | § | |
| | § | |
| Appellant, | § | |
| | § | District Court Case |
| VS. | § | No. 4:14-CV-961-A |
| | § | |
| KNOLL, INC., | § | |
| | § | |
| Appellee. | § | |

MEMORANDUM OPINION
and
ORDER

The above-captioned action is before the court by way of an appeal by Marilyn D. Garner, Chapter 7 Trustee for Tusa Office Solutions, Inc. ("Trustee"), from the bankruptcy court's August 5, 2014 final judgment[1] denying Trustee any relief based on Count I of Trustee's first amended complaint against Knoll, Inc. ("Knoll") filed in Adversary No. 10-04271-DML on January 27,

---

[1] The August 5, 2014 judgment was made final and appealable by a recitation of the language contemplated by Rule 54(b) of the Federal Rules of Civil Procedure. Doc. 259 at 4 (R. 007).

The "Doc. ___" part of the references is to the number of the item as it appears on the bankruptcy court's docket in Adversary No. 10-04271-DML. The "(R.___)" part of the references is to Bates number on the page of the thirty-eight-volume record filed with this court as the record on appeal where a copy of the same item can be found.

2011.  After having considered the appellate briefs filed by the parties, pertinent parts of the record in Adversary No. 10-04271-DML, and relevant legal authorities, the court has concluded that the bankruptcy court's August 5, 2014 final judgment should be affirmed.

I.

### Nature of the Claim Made by Trustee's Count I

Allegations of Trustee's first amended complaint that constitute her Count I claim against Knoll are as follows:

On November 5, 2008, Tusa Office Solutions, Inc. ("Tusa Office"), a debtor, filed a voluntary petition for relief in the bankruptcy court under Chapter 11 of the Bankruptcy Code.  The Chapter 11 case was converted by the bankruptcy court to a Chapter 7 proceeding on July 16, 2009, on which date Trustee was appointed as Chapter 7 Trustee for Tusa Office's estate.

Trustee sought by Count I to avoid pursuant to the authority of 11 U.S.C. § 547(b) prepetition transfers to Knoll of Tusa Office's interest in property in the total amount of $4,592,483.90 (collectively, "Prepetition Payments," and individually, "Prepetition Payment").  By way of background, Trustee alleged that:

> 11.  Knoll manufactures and sells office furniture and related products. Tusa Office operated as a full service furniture dealer and management company and was one of the nation's largest dealerships of furniture

2

manufactured by Knoll. Pursuant to certain purchase orders and dealership agreements, Knoll sold to Tusa Office certain office furniture and related products.

12.   On June 27, 2008, Knoll, Tusa Office, Tusa-Expo Holdings, Inc., and Office Expo, Inc. (collectively, Tusa Office, Tusa-Expo Holdings, and Office Expo, Inc., the "Debtors") entered into that certain Amended and Restated Payment and Security Agreement (the "Amended Payment Agreement"). In the Amended Payment Agreement, among other things, the Debtors acknowledged that they had purchased and received products from Knoll. The Debtors further acknowledged that they owed to Knoll certain trade obligations for those products, which had been paid for pursuant to that certain Payment and Security Agreement dated April 30, 2002, between Tusa Office and Knoll, as amended by (a) that certain First Amendment to Payment and Security Agreement dated June 19, 2003 between Tusa Office and Knoll, (b) that certain Second Amendment to Payment and Security Agreement dated December 2, 2003, between Tusa Office and Knoll, and (c) that certain Third Amendment to Payment and Security Agreement, dated August 8, 2005, between Tusa Office, Office Expo, Inc., and Knoll (collectively, the "Prior Agreement").

13.   Pursuant to the Prior Agreement, Tusa Office and Office Expo, Inc. ("Office Expo") had a credit limit in the aggregate amount of $3,500,000.00. The credit limit was thereafter raised to $5,000,000.00. According to the Amended Payment Agreement, as of June 27, 2008, the Debtors were indebted to Knoll in the amount of $5,567,853.89, consisting of $2,863,898.60 less than 90 days past invoice date (the "Current Indebtedness"), and $2,703,955.29 more than 90 days past invoice date (the "Past-Due Indebtedness").

14.   Under the Amended Payment Agreement, Knoll extended the terms of payment on the Current Indebtedness owed by Debtors to Knoll, and Knoll agreed to make additional sales of its products upon credit, upon the condition that the Debtors amend and restate the terms of the Prior Agreement pursuant to the terms of the Amended Payment Agreement.

15.   The Prepetition Payments that Tusa Office made to Knoll, which Trustee seeks to avoid in Count I as preferences, were payments applied to certain outstanding invoices that Knoll had issued to Tusa Office on account of products sold to it by Knoll. Attached as Exhibit B is a chart that indicates, for each Prepetition Payment, the corresponding invoice dates, invoice numbers, and invoice amounts paid by the Prepetition Payment. Because each Prepetition Payment paid an outstanding invoice, it was a payment on account of an antecedent debt. In addition, the Prepetition Payments reduced the amount of debt that Tusa Office owed to Knoll pursuant to the Amended Payment Agreement. The Prepetition Payments were payments on account of an antecedent debt (the debt owing from Tusa Office to Knoll under the Amended Payment Agreement) for that reason as well.

Doc. 17 at 3-5, ¶¶ 11-15 (R. 434-36) (footnote omitted).

Trustee alleged that each Prepetition Payment (1) was a transfer of an interest of Tusa Office in property, (2) was made to and for the benefit of Knoll, (3) was made for or on account of an antecedent debt owed by Tusa Office to Knoll before the Prepetition Payment was made, (4) was made at a time when Knoll was a creditor of Tusa Office, (5) was made while Tusa Office was insolvent, (6) was made on or within ninety days before Tusa Office filed its petition for relief under Chapter 11 (the "Preference Period"), and (7) enabled Knoll to receive more than Knoll would receive if (a) Tusa Office's bankruptcy case were a case under Chapter 7, (b) the Prepetition Payment had not been made, and (c) Knoll received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.  Therefore,

4

Trustee alleged, the Prepetition Payments are avoidable pursuant to 11 U.S.C. § 547(b).

II.

Bankruptcy Court's Memorandum Opinion

On August 5, 2013, the bankruptcy court issued a memorandum opinion in which it made the findings and conclusions that led to the August 5, 2014 final judgment. Garner v. Knoll (In re Tusa Expo Holdings, Inc.), 496 B.R. 388 (Bankr. N.D. Tex 2013). The Background section of the opinion gives a full description of the historical events. Id. at 391-398. Because the court has seen nothing to cause it to believe that the bankruptcy court's Background description is not supported by the record of the proceedings in the bankruptcy court, this court adopts that description by reference.

The Discussion section of the opinion starts with a quotation from Union Bank v. Wolas, 502 U.S. 151, 160-61 (1991) that "[a] preference is a transfer that enables a creditor to receive a payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankrupt estate." Garner, 496 B.R. at 398. As the

bankruptcy court noted, <u>id.</u>, the elements of a preference are set forth in § 547(b) of the Bankruptcy Code, which reads as follows:

> (b)   <u>Except as provided in subsections (c)</u> and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
>       (1)   to or for the benefit of a creditor;
>       (2)   for or on account of an antecedent debt owed by the debtor before such transfer was made;
>       (3)   made while the debtor was insolvent;
>       (4)   made--
>          (A)   on or within 90 days before the date of the filing of the petition; or
>          (B)   between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>       (5)   that enables such creditor to receive more than such creditor would receive if--
>          (A)   the case were a case under chapter 7 of [the Code];
>          (B)   the transfer had not been made; and
>          (C)   such creditor received payment of such debt to the extent provided by the provisions of [the Code].

11 U.S.C. § 547(b) (emphasis added).

Then, the bankruptcy court proceeded with a scholarly analysis that led to the court's conclusion that "Knoll's receipt of the Preference Period Payments did not result in a voidable preference."[2]   <u>Garner</u>, 496 B.R. at 400.   In the course of reaching that ultimate conclusion, the bankruptcy court found that (1) "[t]he Trustee did not satisfy her burden to prove that

---

[2]The bankruptcy court used the term "Preference Period Payments" in reference to the same payments that the Trustee called "Prepetition Payments" in the first amended complaint.

Knoll received more as a result of the Preference Period Payments than it would have received in a hypothetical liquidation," id. at 403; (2) "[t]he Preference Period Payments did not diminish Tusa Office's estate because the Preference Period Payments would not have been available to pay Tusa Office's general creditors in a hypothetical liquidation," id. at 405; and (3) "[Tusa Office's] estate was not diminished because Knoll's receipt of the Preference Period Payments was not done at the expense of general unsecured creditors," id. at 406.

After giving full explanations as to why it concluded that the Preference Period Payments did not result in voidable preferences within the meaning of § 547(b), the bankruptcy court turned to a consideration of the § 547(c)(5)[3] exception to the voidable preference provisions of § 547(b).  Id.  The bankruptcy court found the existence of the facts that would cause the exception to be applicable, finding that "Knoll's deficiency

---

[3]Section 547(c)(5) provides in pertinent part as follows:
    (c)  The trustee may not avoid under this section a transfer--
               * * * * *
      (5)  that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of--
        (A)(i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition . . . .
11 U.S.C. § 547(c)(5)(A)(i).

increased by $971,833 from the Preference Date to the Petition Date," thus leading to the conclusion that "Knoll's secured position did not improve, but actually deteriorated throughout the Preference Period." Id.

### III.

### Issues Raised on Appeal

The parties disagree as to the proper definition of the issues presented for review. Am. Appellant's Br. at 1-3; Appellee's Br. at 1-2. Because this court's affirmance of the August 5, 2014 final judgment is predicated on the bankruptcy court's ruling that the § 547(c)(5) exception to applicability of § 547(b) applies, the court is not concerning itself with the disputes between the parties as to issues presented on appeal other than those related to applicability of § 547(c)(5). Trustee defines the § 547(c) issues as follows:

> 4.    Did the Court err in concluding that the affirmative defense under 11 U.S.C. § 547(c)(5) applied to defend the Preference Payments that the Trustee seeks to avoid in Count 1, where (i) Knoll did not assert the section 547(c)(5) affirmative defense until after trial, and the Court granted Knoll's post-trial motion for leave to amend its answer; and (ii) the plain language of section 547(c)(5), as well as its purpose, make clear that it applies only to transfers that create perfected liens in receivables or inventory, and not to the payments that the Trustee seeks to avoid in Count 1. The Court's decision to grant Knoll's motion for leave to amend its answer to assert the section 547(c)(5) affirmative defense is reviewed for abuse of discretion. The interpretation

8

of section 547(c)(5) is a question of law that is
reviewed <u>de novo</u>.

Am. Appellant's Br. at 3, ¶ 4 (footnotes omitted).  Knoll's

version of the § 547(c) issues presented for review is as

follows:

> D.   Whether the Bankruptcy Court abused its
> discretion by granting the Motion to Amend when:
> (i) Appellant failed to object to and/or present
> evidence as to Section 547(c)(5) during the Bifurcated
> Trial; (ii) the amendment allowed the Answer to conform
> to the evidence presented during the Bifurcated Trial;
> (iii) Appellant's Closing Argument addressed the
> applicability of Section 547(c)(5) to Count I; (iv) the
> amendment assisted the Bankruptcy Court in deciding
> Count I on the merits; and (v) Appellant's burden of
> proof under Section 547(b) was not affected.  The
> standard of review for this issue is abuse of
> discretion.

> E.   Whether 547(c)(5) applies to Count I when
> Fifth Circuit law applies Section 547(c)(5) to shield
> cash payment to creditors with floating liens on
> accounts receivable and inventory.  This issue presents
> a question of law; thus, the standard of review is <u>de
> novo</u>.

Appellee's Br. at 1-2, ¶¶ D-E (footnotes omitted).  The court

considers Knoll's version to more accurately define the

§ 547(c)(5) issues to be resolved.

IV.

<u>Analysis</u>

The court has concluded that nothing would be gained by a

discussion of any of the issues the parties say are presented by

this appeal other than the § 547(c)(5) issues.  The court has

9

concluded that the § 547(c)(5) issues should be resolved in Knoll's favor and that such a resolution is dispositive, requiring an affirmance of the bankruptcy court's August 5, 2014 final judgment.

A.   The Bankruptcy Court Did Not Abuse Its Discretion in Allowing the § 547(c)(5) Amendment

The first prong of Trustee's complaint with the bankruptcy court's § 547(c)(5) holding is that the bankruptcy court erred in granting Knoll's motion for leave to amend post-trial its answer to assert the § 547(c)(5) defense to the Count I claims.

While Knoll alleged in its answer to the first amended complaint that § 547(c)(5) was an affirmative defense to Trustee's preference claims in Count II of her first amended complaint, Doc. 19 at 14-15, ¶ 75 (R. 486-87), Knoll did not plead the § 547(c)(5) exception to § 547(b) as to Trustee's Count I claim until given permission by the bankruptcy court to do so post-trial.  The court has concluded that the bankruptcy court did not abuse its discretion in granting that permission.

On February 11, 2013, Knoll filed its motion for leave to amend its answer to assert § 547(c)(5) as a defense to the Count I claims.  Doc. 201 (R. 2110).  The post-trial amendment was sought pursuant to the authority of Rule 15(b) of the Federal

Rules of Civil Procedure.[4]  Doc. 201 at 3 (R. 2112).  Trustee

filed a written response opposing the motion for leave.  Doc. 203

(R. 2120).  On April 10, 2013, the bankruptcy court had a hearing

on the motion, Doc. 272 (R. 457), and on April 24, 2013, the

bankruptcy court issued an order granting the motion for leave,

Doc. 205 (R. 2150), expressing the findings in the order "that

(i) notice was proper under the circumstances; and (ii) that

sufficient cause exists to grant the Motion," Doc. 205 at 2 (R.

2151).

     As both parties acknowledged, the standard of review on this

appeal is abuse of discretion.  That was the holding of the Fifth

Circuit in <u>Deere & Co. v. Johnson</u>, 271 F.3d 613, 621 (5th Cir.

2001)(stating that "[w]e review Rule 15(b) amendments for abuse

---

[4]Rule 15(b) of the Federal Rules of Civil Procedure reads as follows:
(b) AMENDMENTS DURING AND AFTER TRIAL.
     (1)   <u>Based on an Objection at Trial</u>.  If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended.  The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits.  The court may grant a continuance to enable the objecting party to meet the evidence.
     (2)   <u>For Issues Tried by Consent</u>.  When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.  A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.  But failure to amend does not affect the result of the trial of that issue.
Fed. R. Civ. P. 15(b).

of discretion"). In <u>Deere & Co.</u>, the Fifth Circuit explained the purpose of Rule 15(b) as follows:

> As has been often said, the principal purpose of Rule 15(b) is judicial economy. If the parties either expressly or implicitly consented to having a matter litigated, and the evidence provides the court with sufficient guidance to resolve the matter, amending the pleadings saves judicial resources.

<u>Id.</u> at 621-22. However, the Fifth Circuit went on to note that "saving resources usually takes a back seat to procedural due process." <u>Id.</u> at 622. The Court added that "in the absence of express consent, trial of unpled issues by implied consent is not likely to be inferred under Rule 15(b), and such inferences are to be viewed on a case-by-case basis and in light of notice demands of procedural due process." <u>Id.</u> (internal quotation marks and brackets omitted). The Fifth Circuit quoted with approval from <u>Morgan and Culpepper, Inc. v. Occupational Safety & Health Review Comm'n</u>, 676 F.2d 1065, 1068 (5th Cir. 1982), that "while it is true that amendments . . . should be freely granted, it is just as certain that the company charged should be given an opportunity to fully respond to the new theories presented." <u>Deere & Co.</u>, 271 F.3d at 622 (internal quotation marks and brackets omitted).

In the instant action, potential due process concerns were addressed. The bankruptcy court found in the order granting

12

leave that notice was proper and that sufficient cause exists.
Doc. 205 at 2 (R. 2151).  They also were addressed at the hearing
on the motion for leave when, after announcing his intent to
grant leave to amend, the bankruptcy judge informed counsel for
Trustee that the judge would entertain a motion to allow the
Trustee to reopen the record and add evidence to the record if
the Trustee wished to file such a motion.  Doc. 272 at 14
(R. 5470).  And, the judge went on to say that he would accept
further briefing that either side wished to file, _id._, and that
he would consider a motion to add to the record either party
wished to file, to the extent that the party thought that there
was evidence that would overcome or affect his decision to grant
the motion for leave, Doc. 272 at 14-15 (R. 5470-71).

    In explanation of his decision to grant the leave, the
bankruptcy judge said that the assignment he had given the
attorneys to begin with, when they were in Chambers prior to the
development of the scheduling order, should have put the parties
on notice that § 547(c)(5) could play a role in Count I.  Doc.
272 at 15 (R. 5471).  The bankruptcy judge undoubtedly had in
mind the following statement he made at an April 4, 2012 pretrial
status conference:

> I just want to get around to diminution.  And,
> basically, with respect to the preference claims,
> almost on a 553 analysis, that you had -- 90 days out

you guys had a $600,000 deficiency and on the date of
filing you had a $200,000 deficiency, and if that's the
case, then it appears there's diminution. I mean, I
want you to prove it up as you would both for the
preference or to the extent you have to under 553. I
want you to go through the proper motions. But I mean,
that's sort of what I'm looking at... I mean, I want
you to put on your case in terms of improvement of
position or diminution of value...

Doc. 152 at 7-8 (R. 4133-34)(emphasis and footnote omitted).

Although the bankruptcy judge referred to § 553, the analysis he

described basically is the same analysis the Fifth Circuit has

said should be used to determine whether payments to creditors

with floating liens are avoidable, in other words, a § 547(c)(5)

analysis. See Wilson v. First Nat'l Bank Lubbock, Tex. (In re

Missionary Baptist Found. of Am., Inc.), 796 F.2d 752, 759-60

(5th Cir. 1986); see also Smith v. Assocs. Commercial Corp. (In

re Clark Pipe & Supply Co.), 893 F.2d 693, 697 (5th Cir. 1990)(on

reh'g). So that counsel for Trustee would not misunderstand what

the bankruptcy judge had in mind, at that same status conference

the bankruptcy judge pointedly directed the following remark to

Trustee's counsel: "I mean, I want you to put on your case in

terms of the improvement of position or diminution of value or

14

. . . fairing better than you would have in a Chapter 7." Doc. 152 at 8 (R. 4134).[5]

It should have been apparent to Trustee from the outset that there was the potential the § 547(c)(5) exception could exist to Trustee's Count I § 547(b) claims. The fact that Knoll pleaded the § 547(c)(5) exception as an affirmative defense to Trustee's Count II claims should have highlighted to Trustee that she could well be faced with an argument that the exception applied as well to her Count I claims.

As the bankruptcy court's opinion reflects, during the trial Knoll presented evidence that its position was not improved as a result of having received the Preference Period Payments, a circumstance that was a proper factor for the bankruptcy court to consider. See In re Remes Glass, Inc., 136 B.R. 132, 139-40 (W.D. Mich. Jan. 14, 1992). During closing arguments, counsel for Knoll argued that § 547(c)(5) applied to both Counts I and II. Doc. 193 at 24, 43-44 (R. 5429, 5448-49). Rather than to address the factual merits of the § 547(c)(5) exception as to Count I, counsel for Trustee responded that he would discuss the matter further in post-trial briefing. Doc. 193 at 48 (R. 5453).

---

[5]Though at the status conference the bankruptcy judge talked in terms of the same kind of proof that would be required for a § 547(c) analysis, he gave mixed messages as to whether a § 547(c) defense would be entertained, first indicating that the analysis he had in mind was a § 547(c) analysis, Doc. 152 at 5 (R. 4131), and later responding that they were not trying § 547(c) affirmative defenses, Doc. 152 at 7 (R. 4133).

Each side took advantage of the opportunity for further briefing on the applicability of the § 547(c)(5) exception as it pertained to Count I.  Docs. 208 & 209 (R. 2199, 2268).  Trustee could have taken advantage of the bankruptcy court's offer to favorably entertain a motion to reopen the record and to allow further evidence to be presented on the § 547(c)(5) issue as to Count I if desired.  There is no basis for a due process concern in this action.  The bankruptcy judge's invitation to Trustee to request to open the trial record eliminated any possible concern that she did not have adequate notice or did not have an opportunity to present evidence on the § 547(c)(5) exception to applicability of § 547(b) as to Count I.  Trustee has not shown that she suffered any prejudice by the bankruptcy judge's decision to allow an amendment to Knoll's pleading that would conform its defenses to the trial evidence.  The record indicates that she suffered none.

Apropos here is the following explanation given by the Fifth Circuit of the goal and proper application of Rule 15(b):

> In allowing for the amendment of pleadings, Rule 15(b) is designed to ensure that poor foresight on the part of scriveners is not converted into tunnelvision on the part of judges.  The amendment process prevents technicalities in pleading from impeding the just resolution of the merits of cases. . . .  To effectuate the policy underlying Rule 15(b), and in recognition of the spirit of the Federal Rules of Civil Procedure,

this Circuit has pursued a course of strong liberality
in allowing amendments.

Mineral Industr., Etc. v. Occupational Safety, 639 F.2d 1289,

1292 (5th Cir. 1981)(citations, internal quotation marks, and

internal ellipses omitted).[6]

To have denied Knoll's request for leave to amend its answer

would have converted poor foresight on the part of the author of

Knoll's answer to the first amended complaint into tunnelvision

on the part of the bankruptcy judge that would have impeded the

just resolution of the merits of Trustee's Count I claims.

For the reasons stated, the court concludes that the

bankruptcy court did not abuse its discretion by granting Knoll's

motion for leave to amend.  The amendment served to secure the

just and speedy determination of the Count I claims as Rules 1

and 15(b) of the Federal Rules of Civil Procedure envision.

B.    The Other Prong of Trustee's Complaint With the Bankruptcy
      Court's § 547(c)(5) Holding Likewise Lacks Merit

Trustee does not take issue with the bankruptcy court's

finding that Knoll's deficiency increased from the Preference

Date to the Petition Date, "but actually deteriorated throughout

the Preference Period."  Garner, 496 B.R. at 406.  Instead, other

---

[6]In Mineral Industries, Etc., the Fifth Circuit added the explanation that "an implied amendment
of the pleadings should not be permitted where it would operate to deny a party a fair opportunity to
present evidence material to newly-added issues." 639 F.2d at 1293.  As noted in the text, Trustee was
not denied a fair opportunity to present evidence material to the § 547(c)(5) exception to applicability of
§ 547(b) as to Trustee's Count I claims.

than Trustee's contention that the bankruptcy court erred in granting Knoll's motion for leave to amend, her only complaint directed at the bankruptcy court's § 547(c)(5) holding as to Count I is her contention that the financing arrangement existing between Knoll and Tusa Office during the Preference Period was not of a kind that would qualify for the § 547(c)(5) exception. The court has concluded that Trustee is incorrect in her interpretation of the intent of § 547(c)(5), and that the bankruptcy court did not err in giving it effect as to Trustee's Count I claims.

The financing arrangement between Tusa Office and Knoll during the ninety-day period before Tusa Office filed its bankruptcy case is what has been referred to in court decisions as a "floating lien" financing device, which the Ninth Circuit described as follows:

> A floating lien is a financing device where the creditor claims an interest in property acquired after the original extension of the loan and extends its security interest to cover further advances.  The floating lien is a lien against a constantly changing mass of collateral for a loan value that will change as payments are received and further advances are made.

Batlan v. TransAmerica Commercial Fin. Corp. (In re Smith's Home Furnishings, Inc.), 265 F.3d 959, 964 (9th Cir. 2001).  As the

Eleventh Circuit held, § 547(c)(5) applies to such a "floating lien" arrangement, explaining:

> Since Creditor had a "floating lien" on Debtor's
> inventory and accounts receivable, the section
> 547(c)(5) exception to preferential transfers applies
> and our inquiry should be whether Creditor's position
> "improved" relative to what it was preceding
> bankruptcy.

Roemelmeyer v. Walter E. Heller & Co. Se. (In re Lackow Bros., Inc.), 752 F.2d 1529, 1531 (11th Cir. 1985). In Galloway v. First Alabama Bank (In re Wesley Indus., Inc.), the Eleventh Circuit elaborated, explaining:

> Section 547(c)(5) of the Act carves out an exception
> for inventory or accounts receivable that protects the
> transfer of a security interest in after-acquired
> property, i.e., a "floating lien," provided that the
> creditor does not improve its position within the
> vulnerable period prior to bankruptcy.  This exception:
>> permits a creditor with, say, a 'floating
>> lien' on the 'receivables' of such a company
>> to maintain that lien as the specific
>> accounts receivable are paid off, and
>> replaced by new ones, without fear that a
>> future bankruptcy trustee will mount a
>> preference attack on new accounts receivable
>> arising during the 'preference' period. . . .
>> Insofar as the grant of a security interest
>> in the new collateral (receivables or
>> inventory that comes into existence during
>> the preference period) <u>improves</u> the
>> creditor's position (compared to his position
>> at the beginning of the preference period),
>> the grant of security constitutes a
>> preference to the extent of the improvement.
>> Braunstein v. Karger (In re Melon Produce,

Inc.), 976 F.2d 71, 75 (1st Cir.
1992)(citation omitted).

30 F.3d 1438, 1442 (11th Cir. 1994).

Fifth Circuit law is consistent with the law of the Eleventh

Circuit. See Smith, 893 F.2d at 696-97; see also Wilson, 796

F.2d at 759-60.

The court has concluded that the bankruptcy court did not

err in giving effect to the § 547(c)(5) exception as to Trustee's

Count I.

C.   Conclusion

Having concluded that the substantive § 547(c)(5) ruling of

the bankruptcy court as to Count I was not error, and that the

bankruptcy court did not err in granting Knoll leave to amend its

answer to allege the § 547(c)(5) exception as an affirmative

defense, the court has determined that the bankruptcy court did

not err in its § 547(c)(5) holdings.   Inasmuch as those holdings

are dispositive against Trustee of Trustee's Count I claims, the

court does not find a need to discuss any of the other issues

Trustee has designated in her appellate brief as issues for

appellate review.

V.

Order

For the reasons stated above,

The court ORDERS that the bankruptcy court's August 5, 2014 final judgment denying Trustee any relief against Knoll based on Count I of Trustee's first amended complaint be, and is hereby, affirmed.

SIGNED March 4, 2015.

JOHN McBRYDE
United States District Judge

21